# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| FRANK MCALLISTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 2:07-CV-141 JVB |
| | ) |
| TOWN OF BURNS HARBOR; TOWN OF | ) |
| BURNS HARBOR POLICE DEPARTMENT; | ) |
| JERRY L. PRICE, individually and in his | ) |
| capacity as chief police officer of the Town | ) |
| of Burns Harbor Police Department; | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendants' motion for summary judgment (DE 33).

### A. Background

Plaintiff Frank McAllister sued the Town of Burns Harbor, its police department and its chief of police, Jerry L. Price, alleging state law claims for negligence and negligent infliction of emotional distress, and violations of 42 U.S.C. § 1983. His complaint arises out of the aftermath of an automobile accident on March 1, 2006, in Burns Harbor, Indiana. He claims that Defendant Price used excessive force in removing him from his car following the accident, and that he thereby suffered a broken right hip and other injuries. Defendants maintain that the undisputed evidence shows that Defendant Price's actions were reasonable and that he is entitled to qualified immunity on Plaintiff's §1983 claim. They also argue that there are no facts from which a jury could find a policy of the use of excessive force by Burns Harbor and that Ind.

Code § 34-13-3-3 provides Defendants with immunity.

B. **Legal Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50* (1986).

**C. Facts**

The relevant facts assumed to be true for the purpose of ruling on Defendants' motion for summary judgement are:

On March 1, 2006, Plaintiff was driving in the town of Burns Harbor on U.S. Highway 20, west of State Road 149. He was wearing a medical alert necklace which disclosed that he has diabetes. He experienced an episode of low blood sugar, during which his car struck two others, the second belonging to Donald Barden. After the collision, which Barden described as a slight bump to the rear of his truck, he approached Plaintiff's car and found him "staring off into space, kind of convulsing." (Barden Dep. at 11). According to Barden, Plaintiff did not appear drunk, but was not cognizant of his surroundings—not aware of what was going on. Barden asked if he was ok, but Plaintiff did not respond. Michelle Draves, another person at the accident scene, described Plaintiff's hand movements as twitchy as he appeared to her to be reaching for the radio knob in his car.

Plaintiff remembers coming to and seeing Barden's truck in front of his car. He saw

Barden approach his car and heard him ask if he was ok, but found himself unable to talk. He next remembers someone yelling at him to shut off his engine and trying to comply, but being unable to find the ignition. He next recalls lying face down on the highway in handcuffs.

Defendant Price arrived at the scene less than five minutes after the collision. He walked up to Plaintiff's car as Barden was about to open the door to turn off the engine and yelled at Plaintiff to shut off the engine. Defendant Price asked Plaintiff what was wrong with him, to which Plaintiff did not respond. Later Defendant Price yelled at him not to touch his car keys. Defendant Price then forcefully removed Plaintiff from his car, pulling him out by his left arm. Defendant Price threw Plaintiff to the ground by applying his knee to Plaintiff's lower back, with his full body weight behind it, and handcuffed him. According to Barden, who was standing at the rear of Plaintiff's car while Defendant Price was removing Plaintiff from his car and cuffing him, Plaintiff did not appear to be resisting Defendant Price. Plaintiff lay face first on the ground twitching intensely.

Once Plaintiff was on the ground, Defendant Price looked through Plaintiff's wallet and asked him if he was a diabetic. Plaintiff shook his head no. At this point Defendant Price had not checked Plaintiff for any type of necklace or bracelet. Plaintiff's wrists were bleeding from what Barden believed were too tight handcuffs. After the handcuffing Defendant Price walked past Barden and made the comment "this guy has pissed me off." (Barden Dep.at 19). Defendant Price stated that when he approached the scene he was angry, believing that he was dealing with a drunk driver who had caused the two collisions.

Defendant Price had put Plaintiff in Price's vehicle when a bystander asked him if he had checked for a bracelet or necklace. After Defendant Price checked, his demeanor changed. He

4

became less forceful and angry and he removed Plaintiff's handcuffs and took him to sit on the tailgate of Barden's truck.

Plaintiff maintains that his hip had not hurt when he was seated in his car after the accident, but that it was very painful when he regained consciousness on the ground after having been handcuffed. Plaintiff was transported to the hospital by ambulance. He spent ten days in the hospital. He was found to have a broken hip and a bruised lung.

Following the collision, Barden went to the Burns Harbor Police Station to complain about Defendant Price's treatment of Plaintiff. However, when he discovered that Price was the chief of police he did not follow through with the complaint, believing he had no one to complain to. He did eventually talk with other town officials about the incident.

Defendant Price's version of events is quite different. He asserts that at all times, until he succeeded in handcuffing him, Plaintiff was resisting him. He believed Plaintiff to be drunk. Michelle Draves, another witness on the scene, saw Plaintiff wiggling and moving as Defendant Price tried to pat him down. She also believed he was drunk, as did witnesses Sheri Roge and Craig Tkach, the driver of the other vehicle Plaintiff struck. These witnesses all believe Defendant Price acted appropriately under the circumstances.

Defendant Price has served the Burns Harbor Police Department since 1983. He took the basic twelve-week course and also completed a forty-hour course to become a breath test operator. Other training includes a forty-hour course to become a DUI instructor. He has worked as a DUI instructor through Northwestern University and has taught rookie officers at the Indiana Police Academy three-day field training. He rose from corporal to sergeant and, in 2002 was promoted to Chief of Police.

## D. Discussion

**(1)** *Plaintiff's Excessive force claim*

Section 1983 is not a source of substantive rights. Rather, it provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n. 9, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. v. Johnson*, 346 F.3d 788, 791 (7th Cir.2003) (citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir.1996)).

Qualified immunity is a defense to a claim under § 1983, shielding police officers from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir.2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982)). "The inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir.2001) (citations omitted). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "[P]laintiff bears the burden of showing the existence of allegedly clearly established constitutional right." *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir.1996).

The parties do not dispute that Defendant Price acted under color of state law. Hence, the Court must determine only if there is a genuine issue of material fact as to whether Defendant

Price deprived Plaintiff of a right secured by the Fourth Amendment to the United States Constitution—that is, a right to be free from unreasonable seizure—by using excessive force in detaining him.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir.2004) (citations omitted). The dispositive question is whether the actions of the officer was "objectively reasonable" in light of the facts and circumstances that confronted him. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This inquiry is to be made according to the knowledge of an officer who was at the scene, not according to the "20/20 vision of hindsight." Id. at 396. Three factors should be considered in this inquiry: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether he is actively resisting arrest by flight. *Id.*

Having considered these factors, the Court finds that there is a genuine issue of fact as to whether Defendant Price used excessive force in dealing with Plaintiff. Although Defendant Price and other witnesses testified that Plaintiff appeared to be drunk and resistant, their accounts are contradicted by Barden. Barden testified at his deposition that Defendant Price forcefully removed Plaintiff from his car and threw him to the ground. Barden saw Plaintiff convulsing, not resisting. Plaintiff sustained serious injuries—a broken hip and a bruised lung—resulting in a long hospital stay.

Defendants argue that *Smith v. Ball State Univ.*, 295 F.3d 763 (7th Cir. 2002), a case which also involved a diabetic driver who did not respond to police commands, dictates

summary judgment in this case. The facts are distinguishable. In *Smith* there was no eye witness testifying that the plaintiff appeared to be convulsing rather than resisting. The plaintiff in *Smith* received only scratches and bruises, a lump on his head, and some wrist marks from the handcuffs. *Id.* At 766-67. The court in *Smith* found that the plaintiff's unresponsiveness "necessitated the use of *minimal force* to remove him from his vehicle" and handcuff him *Id.* at 766 [emphasis added]. In the instant case, a reasonable jury could find that Defendant Price took Plaintiff to the ground so forcefully that he broke his hip.

**(2)** *Qualified Immunity*

Neither does the doctrine of qualified immunity support summary judgment in favor of Defendant Price on Plaintiff's 1983 claim. Qualified immunity serves to protect those public officials who have violated a constitutional right when the contours of that right were not sufficiently clear at the time to enable a reasonable official to know that his conduct was prohibited. *Holmes v. Village of Hoffman Estate*s, 511 F.3d 673, 687 (7th Cir 2007). At the time of this incident, it was of course clearly established that a police officer may not use excessive force in detaining or arresting an individual. Accepting the facts most favorable to the plaintiff, no reasonable officer could have thought that it was acceptable to forcibly remove a man from his car who was physically unable to obey commands, who was in the midst of convulsions, and to throw him to the ground with the full force of his body weight.

**(3)** *Municipal Liability under § 1983*

A municipality can be liable under § 1983 only if the municipality itself, through a policy

8

or custom, deprives someone of their constitutional rights. *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Municipal liability can be found under three circumstances: "(1) through an express policy that, when enforced causes a constitutional deprivation; (2) through a widespread practice that although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final policy-making authority." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Defendants admit in their brief in support of summary judgment that as a matter of Indiana law a police chief is the final policy maker for his municipal police department, but maintain that Plaintiff is still required to offer evidence that the actions of Defendant Chief of Police Price were in the execution of an official policy or custom. This is not the law and the cases Defendants cite for this proposition do not support their claim.

In *Diebitz v. Arreola,* 834 F. Supp. 298, 299 (E.D. Wis. 1993), cited by Defendants, the facts demonstrate that the plaintiff had not even alleged that the defendant chief of police had personally engage in the allegedly unconstitutional acts: he was sued in his official capacity only, which is the equivalent of suing the municipality.[1] In *Diebitz*, because the plaintiff had failed to prove that the alleged excessive force used against the plaintiff was pursuant to a police department, or city, policy or custom, the court granted judgment as a matter of law as to those defendants.

---

[1] In *Kentucky v. Graham*, 473 U.S.159 (1985), the Supreme Court stated that an official capacity claim is simply "another way of pleading an action against an entity of which an officer is and agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 165–66 (quotations omitted).

Similarly, in *Smith v. City of Joliet*, 965 F.2d 235, 237 (7th Cir. 1992), no individual—whether a final policy maker or otherwise— was named as a defendant. The court neither stated nor implied that a plaintiff must offer evidence that a final policy maker who is alleged to have personally engaged in the unconstitutional conduct was carrying out an official policy or acting pursuant to a longstanding custom in order to establish a § 1983 claim. Accordingly, summary judgment for the Town of Burns Harbor on Plaintiff's § 1983 claim is denied.[2]

**(4)** *State Law Claims*

Defendant Price is entitled to summary judgment on Plaintiff's state law claims in his individual capacity. Indiana Code § 34-13-3-5(b) provides that a "lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Not only does Plaintiff specifically allege (and Defendants admit) that "at all times relevant herein Defendant Price was employed by the Town of Burns Harbor and the Town of Burns Harbor Police Department and was acting within the course of his employment (Compl. ¶ 29), but the undisputed facts disclose that he was in uniform, in a marked car, responding to a dispatch call concerning a traffic accident and a possible drunk driver when the events giving rise to Plaintiff's claims occurred. When an employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment. *Wilson v. Isaacs*, 917 N.E.2d 1251, __ (Ind. Ct. App. 2009) (citations omitted).

---

[2]Plaintiff has also named the Burns Harbor Police Department as a defendant. As Defendants correctly point out, a police department is not a suable entity under Indiana law. *Slay v. Marion County Sheriff's Dept.*, 603 N.E.2d 877, 887 (Ind. Ct. App. 1992). Accordingly, it shall be stricken from the caption of this case.

Defendant Price's conduct was undeniably of the same general nature as his everyday duties as a law officer for the Town of Burns Harbor.

The *Wilson* case, decided in mid December 2009, outlines the unsettled state of Indiana law with regard to governmental entity immunity under Indiana Code §34-13-3-3. However, because the Plaintiff has failed to offer any argument supporting liability on the part of the Town of Burns Harbor, he has waived the issue. Accordingly the Court also grants summary judgment in favor of the Town of Burns Harbor on Plaintiff's state law claims.

**E. Conclusion**

Defendants' Motion for summary judgment (DE 33) is GRANTED in part and DENIED in part. It is DENIED as to Plaintiff's § 1983 claims against Defendants Price and the Town of Burns Harbor; summary judgment is GRANTED as to his state law claims. Town of Burns Harbor Police Department is stricken from the caption of this case.

SO ORDERED on January 15, 2010.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge