**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | | |
|---|---|---|
| FRANK MCALLISTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:07-CV-141 JVB |
| | ) | |
| TOWN OF BURNS HARBOR; | ) | |
| JERRY L. PRICE, individually and in his | ) | |
| capacity as chief police officer of the Town | ) | |
| of Burns Harbor Police Department; | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff sued the Town of Burns Harbor and Jerry L. Price, individually and in his capacity as the Town's police chief under the Civil Rights Act of 1871, 42 U.S.C. § 1983. This matter is before the Court on the Town's second motion for summary judgment, filed by leave of Court. (*See* DE 80). [1]

**A. Background**

The facts of this case are set out in this Court's Opinion and Order on Defendants' first motion for summary judgment (DE 52) and will not be repeated here. In that opinion the Court denied summary judgment to Burns Harbor police chief Jerry Price individually because there were genuine issues of fact as to whether he used excessive force on Plaintiff during an encounter on March 1, 2006. The Court also denied summary judgment as to the Town of Burns Harbor because Defendants admitted in their brief in support of the motion that a police

---

[1] A § 1983 suit against a town official in his official capacity is a suit against the municipality itself. *See Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir.1998). Therefore, the court construes Burns Harbor's motion to include any claims made against Defendant Police Chief Price in his official capacity.

chief is the final policymaker for his department.[2] Relying on the admission, the Court followed Supreme Court and Seventh Circuit Court of Appeals holdings that municipal liability under § 1983 can be found if the constitutional injury was caused by a person with final policymaking authority. *See Pembaur v. Cincinnati*, 475 U.S. 469, 484 (1986); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005).

Defendants have now repented of their admission and argue that Chief Price was not a final policy maker with respect to the actions in question.

B.     **Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the

---

[2]Defendants stated in their brief in support of their first motion for summary judgment: "'Indiana law expressly indicates that "a police chief . . . is the final policymaker for his municipal police department.' *Neighbors Bar Inc. v. City of Washington*, 2002 WL 596401 (S.D. Indiana 2002); *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir.1995), citing Indiana Code. § 36-8-3-3(g)." Defs'. Mem. in Supp. of Mot. Summ. J., DE 34, at 20.

2

moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

## C.     Municipal Liability under § 1983

**(1)     *Legal Standard***

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983." *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 694 (1979). A municipality will only be held liable when its official policy or practice causes a constitutional violation. *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994). Accordingly, a plaintiff must show:

> (1) an express policy that, when enforced, causes a constitutional deprivation (2) a widespread practice that, although not authorized by written law or express municipal policy, is permanent and well settled as to constitute a custom or usage

with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006).

Whether an official is a final policymaker with respect to an action is a question of state law. *Eversole v. Steele*, 59 F.3d 710, 716. (7th Cir. 1995). "State or local law will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* (citations and internal quotations omitted).

**(2)** *Chief Price's Status as a Policymaker*

Plaintiff has failed to demonstrate any express policy or widespread practice of the Town of Burns Harbor to establish its liability. Accordingly, his claim against the Town stands or falls on whether Chief Price was a final policymaker with respect to his encounter with Plaintiff on March 6, 2006.

Defendants now claim that Indiana Code § 36-8-3-3(g)—the statute they cited to the Court for the proposition that a police chief is the final policymaker for his municipal police department in their memorandum in support of the first motion for summary judgment—applies only to second and third class cities, not to towns, such as Burns Harbor. Defendants argue initially that under the statutory provision applicable to towns, Indiana Code § 36-8-9-4, a board of metropolitan police commissioners is the final policy making authority for the police department, while the police chief is the executive head of the department.[3]

In his response brief, Plaintiff points out that the Town of Burns Harbor does not have a

---

[3]Section 36-8-9-4(d) provides:
  The board [of metropolitan police commissioners] may make general and special rules for the government and discipline of the police department and special and general orders to the department through the police chief, who is the executive head of the department.

4

board of metropolitan police commissioners and relies on Indiana Code § 36-1-1-12, which includes the police chief of a town in the definition of "upper level policymaking position." In their reply brief, Defendants once again refer the Court to statutes that are applicable to second and third class cities, apparently equating the Town of Burns Harbor, whose population is under 1,000, with a third class city, which is a city with a population of under 35,000.[4] Defendants state that in Burns Harbor the town council is the body that operates as a safety board under Indiana Code § 36-8-3-1, et seq.,[5] and that in this capacity it has adopted general and special orders, rules, and regulations pertaining to the police department. (DE 95-1, Def.'s Reply in Supp. of Mot. for Summ. J., Jordan Aff. at 2.[6])

The Court is skeptical of this claim. Safety boards are features of cities, not towns. *See* Ind. Code § 36-4-9-5. Because the Town of Burns Harbor has neither a safety board nor a board of metropolitan police commissioners, the statutes applicable to those bodies provide no guidance. The only statute applicable to police chiefs in all units of local government is § 36-1-1-12, which designates police chiefs as upper level policymakers. Moreover, even assuming that the Burns Harbor Town Council operates as a board of metropolitan police commissioners under § 36-8-9-4(d), or as a safety board under § 36-8-3-2, according to these statutes, the police chief

---

[4]The fact is that under Indiana law, whether a municipality is a town has nothing to do with population, but depends on whether the municipality was incorporated as a town. *See* Ind. Code § 36-1-2-21. A town is not simply a small city. Towns and cities have different forms of government. For example, the executive of a city is a mayor, while the executive of a town is the president of the town council. *See* Ind. Code § 36-1-2-5(2) and (4). From the fact that it calls itself a town and, if its official website may be relied on, it does not have a mayor, *see* http://burnsharbor.org (last visited July 1, 2011), the Court assumes that the Town of Burns Harbor was incorporated as a town.

[5]Indiana Code § 36-8-3-1 provides: "This chapter applies to second and third class cities. It also applies to other units, where specifically indicated." Indiana Code § 36-8-3-2 is nearly identical to § 36-8-9-4(d) except that it sets out the powers and duties of safety boards *of cities*, including the power to adopt rules for the government and discipline of the police department and to adopt general and special orders to the police department "through the chief of the department."

[6]Jane Jordan is the Clerk-Treasurer of the Town of Burns Harbor.

shares policymaking responsibilities with the board. In issuing general and special orders, the police chief speaks for the board, in that both statutes provide that the board adopts general and special orders to the department "through the chief of the department." Nothing in the statutes or cases Defendants cite suggests that anyone other than the police chief has policymaking authority with respect to the way an arrest is conducted. Nor have they cited any ordinance, rule, or order of the Burns Harbor Town Council that governs arrests.

Defendants argue that Chief Price was no different than any patrol officer when he responded to the dispatch call on March 1, 2006, and therefore cannot be considered a policy maker with respect to the encounter with Plaintiff. The Court disagrees. The fact is that he was the police chief responding to the call. Chief Price's decision to handle Plaintiff's arrest the way he did was a deliberate choice to follow a course of action made from among various alternatives by the official responsible for establishing final policy with respect to the subject matter in question, which is policymaking. *See Pembaur v. Cincinnati*, 475 U.S. 469, 484 (1986).

*Vodak v. Chicago*, 639 F.3d 738, 748 (7th Cir. 2011), negates Defendants' contention that a final policymaker must be making rules to govern future conduct before a municipality may be held liable for his decisions. In that case, several thousand people were engaged in a march in downtown Chicago against the second Iraq war. The superintendent of police for the city of Chicago was monitoring the march from his headquarters. He was found to be a final policy maker with respect to orders he approved for mass arrests of demonstrators. . According to the court, the superintendent *was* the City so far as the arrests were concerned. *Id.* Thus an *ad hoc* decision of a final policymaker can serve as a basis for municipal liability.

*Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992), on which Defendants rely, does not dictate a different result. In that case the plaintiffs alleged that Rice, the Chicago superintendent

6

of police, made discriminatory promotions and demotions. The Court of Appeals for the Seventh Circuit held that he was not a final policymaker with respect to the actions because ordinances applicable to the police department unequivocally banned racial and political discrimination. *Id.* at 399. The court noted that while the city council is usually the policymaker for a municipality, executive officials may have the power to set policy when the legislature is silent. *Id.* That is the case here.

Nor is *Gernetzke v. Kenosha Unified School District No. 1*, 274 F.3d 464 (7th Cir. 2001), cited by Defendants, controlling. There the court held that a school superintendent and principal did not have final policymaking authority under Wisconsin law. No state statute designated these officials as upper level policymakers, which is not the case here.

**D.     Conclusion**

Chief Price is was a final policymaker in his interaction with Plaintiff on March 1, 2006. Accordingly, Defendants' motion for summary judgment (DE 81) is DENIED as to the Town of Burns Harbor and Jerry L. Price in his official capacity.

SO ORDERED on July 14, 2011.

s/ Joseph S. Van Bokkelen  
Joseph S. Van Bokkelen  
United States District Judge